UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  11-20346 Cr-Cooke

**UNITED STATES OF AMERICA,**

    **Plaintiff,**
**vs.**

**ROBERTO GILDON VALENCIA PINTO,**

    **Defendant.**
_____/

## DEFENDANT'S PSI OBJECTIONS

Roberto Valencia Pinto, through counsel, submits the following objections to the presentence investigation report:

The PSI in this case counsels an offense level of 42 and a guideline range imprisonment range of 360 months to life. As detailed in these objections, this range grossly overstates the criminal culpability of a defendant whose sole role in the offense was performing construction work on two submarines that never became operational and never transported any cocaine. Based on a correct application of the sentencing guidelines to Mr. Valencia, his offense level should be 21, and his advisory range should be 37–46 months.

**Para. 54**:

Mr. Valencia objects to ¶ 54 in several respects. First, he denies any connection whatsoever to the drug stash site seized on February 27, 2011. Mr. Valencia was contracted to install fiberglass paneling on two of the three submarines at issue in this case. He did not participate in any way in manufacturing or distributing cocaine, and had no knowledge of the stash site at issue prior to its well publicized seizure on February 27, 2011.

Role Assessment

Second, Mr. Valencia objects to the PSI's role enhancement assigning him a three-level increase as a leader and organizer of the offense. [¶ 54]. The application of this enhancement is patently absurd in this case, and would result in Mr. Valencia (a construction worker) receiving a harsher advisory sentence than those involved in actual drug trafficking. Indeed, Probation seems to forget that the offense at issue is importing cocaine into the United States, and not installing fiberglass on a submarine. The fact that Mr. Valencia subcontracted some of the fiberglass installation work to others (who are not charged in this case) has absolutely no bearing on whether he was a leader or organizer of the conspiracy offense at issue. *See United States v. Campa*, 529 F.3d 980, 1013 (11th Cir. 2008) (quoting *United States v. Glover*, 179 F.3d 1300, 1303 (11th Cir.1999)) ("The enhancement is unwarranted in the absence of a finding that the defendant asserted control or influence over 'at least one other participant' in the crime.") (vacating enhancement).

Far from being a leader or organizer in the offense, Mr. Valencia was a minimal participant. *See United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (en banc) (holding that defendant's role in the *relevant* conduct is dispositive in determining a role adjustment).

Because Mr. Valencia played no part whatsoever in the manufacture or distribution of drugs, and played a small role in the construction of the two submarines, a mitigating role is clearly appropriate. Mr. Valencia is among the least culpable defendants charged in the indictment. He acted at the direction of many individuals charged in the indictment, including Mauner Mahecha, Luis Mahecha, Octavio Marcelo, Romir Gutierrez, Jairo Trejos, Fernando Jimenez, Juan Carlos Pachon, and Oscar Garcia. Moreover, Mr. Valencia did not direct the actions of any individual charged in this case, and to the extent he "supervised" anyone, there is no evidence that these individuals had any knowledge of the criminal purpose of the submarine.

Additionally, Mr. Valencia had no equity interest in the drugs or the submarine. His salary of $10,000 represents a tiny fraction of the $6,000,000 pricetag for the construction of the two submarines, and an even smaller fraction of the approximately $20,000,000 worth of cocaine seized in this case. Consequently, because he had no knowledge of the drug distribution scheme utilized by Mr. Mahecha's organization, and played a very small role in the construction of two submarines, Mr. Valencia is a minimal participant in this case and eligible for a four level reduction under U.S.S.G. § 3B1.2.

Drug Quantity

Mr. Valencia also objects to ¶ 54, which holds him accountable for more than 150 kilograms of cocaine. Once again, the offense charged is the importation of cocaine into the United States. Although approximately 10,000 kilos of cocaine were seized in Colombia from Mr. Mahecha's organization, none of that substance ever reached the United States, and neither of the submarines worked on by Mr. Valencia ever became operational. More importantly, the submarines did not have the ability to reach the United States from Colombia. Accordingly, it is the government's burden to establish with reasonable accuracy the quantity of cocaine that would have reached the United States from Colombia. *See United States v. Lawrence*, 47 F.3d 1559, 1566–67 (11th Cir. 1995) (vacating sentence and reversing as clearly erroneous the district court's reliance on unsupported assertions in the PSI); *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) ("Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative.").

Mr. Valencia admitted at his plea colloquy that he was a participant in a conspiracy to import at least five kilograms of cocaine into the United States. In the absence of any reliable evidence

indicating the likelihood that more than that amount of cocaine would have reached the United States, the relevant drug quantity is five kilograms, and the applicable base offense level is 32.

### Para. 67

Mr. Valencia objects to ¶ 67, which assigns him a two-level enhancement for possessing a firearm. Mr. Valencia never possessed a firearm in this case, nor was he aware of the presence of weapons at either submarine site. Accordingly, the enhancement is not applicable to Mr. Valencia. *See* U.S.S.G. § 2D1.1(b)(1).

### Para. 68

Mr. Valencia objects to ¶ 68, which assigns a two-level enhancement "Because a firearm was vessel or semi-submersible vessel as described in 18 U.S.C. § 2285 was used [sic]." U.S.S.G. § 2D1.1(b)(3)(B) requires a two-level enhancement only if submarine is used and only if it actually imports cocaine. *See Campa*, 529 F.3d at 1015 (citing *United States v. Chastain*, 198 F.3d 1338, 1353 (11th Cir. 1999). Like in *Campa*, the submersibles at issue in this case were never used, and neither ever became operational. Also like in *Campa*, no vessel ever imported any controlled substance into the United States or exported it out of Colombia. For that reason, binding Circuit precedent precludes the application of the enhancement in this case. Accordingly, because neither vessel was actually used to import cocaine as required by the guideline provision, the enhancement is inapplicable.

### Para. 70

As previously discussed, Mr. Valencia objects to the three-level increase based on his alleged role as a leader and organizer. The PSI should be amended to reflect his minimal participation in the offense of importing cocaine into the United States. Accordingly, a four level decrease under § 3B1.2 should apply, along with a four level decrease under § 2D1.1(a)(5).

**Safety Valve**

Mr. Valencia objects to the PSI's failure to credit him with safety valve, and submits thart he is eligible for the waiver of all statutory mandatory minimums under U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). He has no prior criminal record. *See* § 5C1.2(a)(1) & PSI, ¶ 79. He did not use violence, threaten violence, or possess a firearm or other dangerous weapon. *See* § 5C1.2(a)(2). The conspiracy offense at issue did not result in death or serious injury to any person. *See* 5C1.2(a)(3). Mr. Valencia was not an organizer or leader of the offense at issue. *See* § 5C1.2(a)(4). Lastly, Mr. Valencia was debriefed by agents almost immediately after he was extradited to the United States, and answered all of the agents' questions candidly. Mr. Valencia offered, through to counsel, to provide additional information if needed, but the government has not yet asked to arrange a second meeting. Accordingly, he has truthfully provided to the government all information and evidence he has concerning the offense charged in the indictment. *See* § 5C1.2(a)(5).

For all of these reasons, Mr. Valencia is safety-valve eligible. Accordingly, his offense level must be amended to reflect a two-level reduction. Additionally, the applicable statutory penalties must be amended to reflect the absence of any mandatory term of incarceration.

**Conclusion - Advisory Guideline Range**

The PSI incorrectly attributes to Mr. Valencia a base offense level of 38. Under § 2D1.1(c) his base offense level should be 32, based on a drug quantity of more than five, but less than 15, kilograms of cocaine. Additionally, his offense level should be reduced by six levels based on his minimal participation in the offense, under § 3B1.2 and § 2D1.1(a)(5). The PSI must also subtract two levels due to his eligibility for safety valve, and three levels due to his acceptance of responsibility. Lastly, there is no mandatory term of incarceration required by statute. Accordingly, his total offense level should be 21, with an applicable guideline range of 37-46 months.

WHEREFORE, the defendant's objections should be sustained and the PSI amended accordingly.

Respectfully submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:   s/ Samuel J. Randall
      Samuel Randall
      Assistant Federal Public Defender
      Florida Bar No. 56864
      150 West Flagler Street, Suite 1700
      Miami, FL 33130
      Tel: (305) 530-7000 / Fax (305) 536-4559
      samuel_randall@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

   s/*Samuel Randall*
   Samuel Randall